UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                CRIMINAL ACTION

VERSUS                                  NO: 16-134

MICHAEL PORTIS                          SECTION: "J"(4)


**ORDER AND REASONS**

Before the Court is a *Motion to Suppress Identification Testimony and Preclude In-Court Identification* **(Rec. Doc. 46)** filed by Defendant, Michael Portis, and an opposition thereto (Rec. Doc. 49) filed by the United States of America. Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motion should be **DENIED**.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

This matter arises out of an alleged carjacking. The government contends that in the early morning hours of April 24, 2016, two females ("Complainant One" and "Complainant Two") left a residence in New Orleans and got into a vehicle that was parked in the driveway. Complainant One reported that as they walked toward the vehicle she noticed four black males, two of whom were on bicycles, in the street nearby. She reported that she got into the driver's seat and that Complainant Two sat in the passenger seat. Complainant One further reported that she heard a tap on

1

the driver's side window. When she looked out that window, she saw a black male wearing a dark hoodie with his face covered by a black cloth. He pointed a handgun at Complainant One and said, "You move, Imma shoot." At the same time, another perpetrator armed with a handgun approached the passenger side of the vehicle where Complainant Two was sitting. That perpetrator ordered Complainant Two to exit the vehicle. Both Complainants got out of the vehicle and went back into the residence. The two subjects jumped into the vehicle and drove away while other males on the block appeared to be "looking out" for the subjects.

Once inside the residence, Complainant One instructed a male who was there to call the police. According to that male's account, he then went outside and saw two black males fleeing the scene in the vehicle. He reported that he jumped into a different car and attempted to follow the subjects for "a short distance" before returning to the residence. When he arrived home, the vehicle was back in the driveway with the keys on the driver's seat. He also reported seeing two black males walking in the area at that time but did not provide further description.

When New Orleans Police Department ("NOPD") officers first arrived on the scene, they asked the Complainants for a description of the subjects. At that point, Complainant Two provided an initial description of the subject who ordered her to exit the passenger side of the vehicle at gunpoint. She stated that he was

a black male wearing black clothing and had tattoos on his face. About an hour to an hour-and-a-half later, a different officer asked Complainant Two for a description of the same subject. This time, Complainant Two stated that the subject was wearing a mask at the time of the incident. The officer who had taken the initial description overheard this exchange and reminded Complainant Two that she had told him something different. Complainant Two thought about what she said and amended her description. Complainant Two then reiterated that the subject was wearing black clothing with a black hood over his head and that he had tattoos on his face.

NOPD officers canvassed the area to locate the subjects. They saw four black males who they believed fit the description and attempted to detain them. The subjects fled and the officers chased them by foot. After setting up a perimeter, officers eventually located three black males hiding in nearby bushes. Two of the males were wearing dark clothing with dark hooded sweatshirts. One of them, Portis, had multiple tattoos on his face.

NOPD officers then detained two of the suspects in a police vehicle as other officers brought Complainants One and Two to the scene for a show-up identification. When the Complainants arrived, Portis was removed from the police vehicle. He was handcuffed and was flanked by an officer on his left and on his right. The headlights of another police vehicle were flashed on Portis to

illuminate him. Complainant Two immediately identified Portis as the person who pointed a gun at her and demanded she exit the vehicle. Complainant One identified the other suspect.

A grand jury returned an indictment charging Portis and Rodney Brown with carjacking, in violation of 18 U.S.C. § 2119(1) and (2) and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(C)(1)(A)(ii) and (2). Portis was also charged as a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). A third suspect, a juvenile, was also arrested. He was charged with carjacking by the State of Louisiana and has pleaded guilty.

On April 27, 2017, Portis filed the instant motion to suppress identification testimony and preclude in-court identification. Portis requests that Complainant Two's identification be suppressed because the procedure was impermissibly suggestive and led to a substantial likelihood of misidentification. Portis also alleged a Sixth Amendment violation but has subsequently withdrawn this allegation. On May 25, 2017, the Court held a hearing on the motion and took the matter under advisement.

## **LEGAL STANDARD**

"The Due Process Clause protects against the use of evidence obtained from impermissibly suggestive identification procedures." *United States v. Guidry*, 406 F.3d 314, 319 (5th Cir. 2005). The court applies a two-step test, often referred to as the *Braithwaite*

4

test after *Manson v. Braithwaite*, 432 U.S. 98 (1977), to determine the admissibility of identification evidence. *United States v. Moody*, 564 F.3d 754, 762 (5th Cir. 2009). The first step of the *Braithwaite* test is to determine whether the identification procedure is impermissibly suggestive. *United States v. Moody*, 564 F.3d 754, 762 (5th Cir. 2009). If so, the second step requires the court to analyze whether the procedure "posed 'a very substantial likelihood of irreparable misidentification.'" *United States v. Sanchez*, 988 F.2d 1384, 1389 (5th Cir. 1993) (quoting *Simmons v. United States,* 390 U.S. 377, 384 (1968)). If both inquiries are answered in the affirmative, the identification is inadmissible. *Moody*, 564 F.3d at 762.

## DISCUSSION

### I. The Identification Procedure was Impermissibly Suggestive

Portis argues that Complainant Two's identification was impermissibly suggestive because Complainant Two was shown only one suspect, Portis, and he was wearing handcuffs flanked by officers on either side at the time of the identification. This type of identification procedure is referred to as a show-up. *See Watts v. Cain*, No. CV 15-1807, 2017 WL 913621, at *5 (E.D. La. Feb. 13, 2017), *report and recommendation adopted,* No. CV 15-1807, 2017 WL 916413 (E.D. La. Mar. 7, 2017). Show-up identification "differs from identification through a photo line-up or a physical

line-up, because only one individual is presented to the victim for identification." *Id.*

The show-up identification procedure is inherently suggestive. *Amador v. Quarterman*, 458 F.3d 397, 413-14 (5th Cir. 2006) (citing *United States v. Wade*, 388 U.S. 218, 235 (1967)). Portis refers the Court to *Stovall v. Denmo*, where the Supreme Court stated that "[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." 388 U.S. 293, 302 (1967). The Fifth Circuit used similar reasoning when the victim of a robbery was brought to the police station for a show-up and instructed to view the suspect through holes that had been cut out of a piece of cardboard and taped against the window of a sheriff's homicide office. *Amador*, 458 F.3d at 413. The court found that procedure to be unnecessary and suggestive. *Id*. However, the concerns for suggestiveness are minimized when a show-up includes a lineup of multiple people. *See Guidry*, 406 F.3d at 319 (holding that a show-up was not impermissibly suggestive when witnesses were shown the suspect along with four other people).

The show-up in this case is very similar to that in *United States v. Shaw*, 894 F.2d 689, 692 (5th Cir. 1990). In *Shaw*, the witness was brought to the scene of the crime in an FBI vehicle. *Id.* Once there, the witness was shown the defendant, who was handcuffed and the only suspect present. Although the defendant

6

failed to prevail on the *Braithwaite* test's second prong, the court held that the show-up was impermissibly suggestive. *Id*. at 692-93. *See also United States v. Lang*, No. 06-30124, 2007 WL 1725548, at *10 (5th Cir. June 14, 2007) (finding that there was "certainly room for concern" regarding a similar one-person show-up, but that the identification did not have a significant risk of misidentification). Just as in *Shaw*, Complainant Two was driven to the scene by an officer. Furthermore, Portis was not part of a lineup and was handcuffed during the identification. This show-up identification procedure was impermissibly suggestive.

## II. There is not a Substantial Likelihood of Irreparable Misidentification

The second prong of the *Braithwaite* test involves an inquiry into the reliability of an identification. "[R]eliability is the linchpin in determining the admissibility of identification testimony." *Braithwaite*, 432 U.S. at 114. Thus, a show-up that is impermissibly suggestive may still be admissible when there is not a substantial likelihood of irreparable misidentification. Several factors must be considered in determining the likelihood of misidentification. These factors, first identified in *Neil v. Biggers*, are:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the

> witness at the confrontation, and the length of time
> between the crime and the confrontation.

409 U.S. 188, 199-200 (1972). Applying these factors to the instant case, Complainant Two had the opportunity to view the perpetrator while the crime was occurring. She reported that the perpetrator was directly outside the passenger side window of the vehicle and that she was able to view his face and clothing. *See Lang*, 2007 WL 1725548, at *5 (noting that "a few seconds would be ample" time for a witness to form a mental image of gunmen, even if the attack occurred at night). Second, Complainant Two's description was accurate. She correctly reported to officers that the perpetrator had facial tattoos and was wearing black clothing and a dark hooded sweatshirt. Although she momentarily reported that the suspect was masked, Complainant Two corrected her description as soon as the officer pointed out the discrepancy. Furthermore, Complainant Two exhibited a high degree of certainty in identifying Portis as the perpetrator; she identified him "immediately" upon seeing him in close proximity. Finally, the identification occurred approximately two hours after the initial incident, minimizing the risk that Complainant Two's memory could have faded. *See Shaw*, 894 F.2d at 693 (holding a show-up identification to be admissible when it occurred "just a few hours" after the victim identified his photograph, which itself occurred

"only one hour after the robbery"). For all these reasons, there is not a substantial likelihood of irreparable misidentification.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Portis' *Motion to Suppress* (**Rec. Doc. 46**) is **DENIED.**

New Orleans, Louisiana, this 26th day of May.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE